UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 08-42682-MSH |
| CYPHERMINT, INC. | ) | |
|     Debtor | ) | |
| | ) | |
| JOSEPH H. BALDIGA, TRUSTEE | ) | |
|     Plaintiff | ) | Adversary Proceeding |
| | ) | No. 10-04054 |
| v. | ) | |
| C.A. ACQUISITION CORP., C.A. ACQUISITION NEWCO, LLC, and PAYCASH MOBILE, LLC | ) | |
|     Defendants | ) | |

**MEMORANDUM OF DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff in this adversary proceeding and the chapter 7 trustee in the main case, Joseph H. Baldiga, has moved for summary judgment on a complaint against defendants C.A. Acquisition Corp. ("C.A. Acquisition"), C.A. Acquisition Newco, LLC ("Newco"), and Paycash Mobile, LLC ("Paycash"). The trustee's claims against the defendants arise primarily from their alleged failure to comply with the terms of an agreement to purchase the assets of Cyphermint, Inc. ("Cyphermint"), the debtor in the main case. The defendants oppose the summary judgment motion.

1

## Facts

The relevant facts have been established by those allegations in the complaint admitted to by the defendants, the two affidavits and accompanying exhibits submitted by the trustee in support of his motion for summary judgment,[1] and the facts in the trustee's Concise Statement of Material Facts which have not been disputed by the defendants.

On August 28, 2008, C.A. Acquisition offered to purchase the assets of the debtor. The trustee accepted C.A. Acquisition's offer and on August 29, 2008, filed a motion for entry of an order authorizing the private sale of substantially all of the debtor's assets to C.A. Acquisition. The trustee also sought and on September 3, 2008, obtained the court's permission for C.A. Acquisition to manage the debtor's business until the sale could be consummated.

The trustee gave notice of the proposed sale and solicited higher offers to purchase Cyphermint's assets. The trustee received overbids and on September 29, 2008, Judge Rosenthal conducted an auction sale at which C.A. Acquisition was the high bidder. C.A. Acquisition's offer to purchase the debtor's assets, as modified by those alterations to its offer made in the course of the September 29, 2008 auction, called for C.A. Acquisition or its nominee to pay a purchase price consisting of $161,500 cash at closing plus guaranteed payments of 1% of gross revenue, with minimum required payments of $25,000 and $125,000, for 2009 and 2010, respectively, payable within 90 days of the end of each calendar year (the "earn-out payments"). The trustee accepted C.A. Acquisition's offer as modified and the parties adopted it as memorializing the terms of the

---

[1] "[D]ocuments and exhibits identified by affidavit may be submitted to support a motion for summary judgment." *Fed. Deposit Ins. Corp. v. Lauterbach,* 626 F.2d 1327, 1331 (7th Cir. 1980) citing *First National Bank Co. v. Insurance Company of North America*, 606 F.2d 760, 766 (7th Cir. 1979).

2

sale (the "Sale Agreement"). On September 29, 2008, Judge Rosenthal granted the trustee's motion and entered an order approving the sale to C.A. Acquisition or its nominee, pursuant to the Sale Agreement, free and clear of liens, claims, interests, and encumbrances (the "Sale Order").

The next day, the trustee as "transferor," Newco as "transferee," and C.A. Acquisition as "buyer" executed a "General Conveyance, Bill of Sale, and Assignment" (the "Bill of Sale") pursuant to which the trustee transferred the debtor's assets to Newco. Paragraph seven of the Bill of Sale provides that "the transferee accepts the subject assets 'as is,' 'where is,' and 'with all faults.'"

Among the assets of the debtor, which C.A. Acquisition agreed to purchase and which Newco acquired, was a shipping contract with the logistics company DHL.[2] Shortly after the sale, however, DHL ceased operations in the United States and stopped performing under the contract.

The role of the third defendant in this adversary proceeding, Paycash, is at this stage of the proceeding unclear and in dispute. Paycash was not a party to any written agreement with the trustee. At oral argument, the trustee stated that of the assets purchased from the debtor, Paycash came to own certain intellectual property including a trademark called "Paycash." Defendants, however, dispute this and the record does not contain evidence on the matter.

**Procedural Posture**

Prior to filing the complaint that initiated this adversary proceeding, on April 6, 2009, the trustee filed a motion in the main case asserting that C.A. Acquisition and Newco had failed to comply with the terms of the Sale Agreement and requesting, among other things, that the court

---

[2] The information pertaining to the shipping contract with DHL has been put in the record by the defendants. The trustee has not disputed the existence of the DHL contract or its termination.

order C.A. Acquisition and Newco to file quarterly revenue reports beginning with the first quarter of 2009. On May 18, 2009, Judge Rosenthal entered an order approving the trustee's motion without a hearing. The portion of the order relevant to the revenue reports required that "C.A." (defined in footnote one of the trustee's April 6, 2009 motion as C.A. Acquisition **and** Newco) "provide the Trustee with quarterly revenue reports within 30 days of the close of each quarter until such time as C.A. has remitted the entire Earn-out to the Estate, with the first such report to be provided within 30 days of this Order, for the first calendar quarter of 2009 (i.e., January 1, 2009 – March 31, 2009)."

On April 16, 2010, the trustee filed his complaint commencing this action, accompanied by motions for a trustee process attachment and preliminary injunction. At a hearing on April 19, 2010, having found that there was a reasonable likelihood that the trustee would recover judgment against the defendants, I granted the trustee's motions.

**Positions of the Parties**

The trustee now seeks summary judgment on the complaint. Count I of the complaint, styled breach of contract, alleges that the defendants both failed to make the minimum 2009 earn-out payment and failed to submit revenue reports to the trustee as required by the Sale Agreement. Count I asserts damages in the amount of at least $25,000. Count II alleges that the defendants should be held in contempt for violating the Sale Agreement and the court's Order of May 18, 2009, which ordered the submission of revenue reports as required by the Sale Agreement. Count III alleges an anticipatory breach of the Sale Agreement for failure to pay the 2010 earn-out amount and failure of the defendants to provide documentation regarding their financial condition. Count III requests damages of at least $125,000. Count IV of the complaint

4

seeks a preliminary injunction[3] preventing the defendants from transferring, encumbering or assigning assets outside of the ordinary course of business.

The defendants' opposition to the motion for summary judgment relies primarily upon their affirmative defense of frustration of purpose. They argue that the loss of the contract with DHL rendered valueless the only profitable asset of the debtor, eliminating their principal reason for entering into the Sale Agreement. The defendants do not dispute that C.A. Acquisition agreed to make the 2009 and 2010 earn-out payments,[4] but they argue that their frustration of purpose defense excuses performance.

The defendants also suggest that because C.A. Acquisition, the original bidder, assigned its rights under the Sale Agreement to Newco with the consent of the trustee, C.A. Acquisition should be absolved from any liability to the trustee as a result of breach of the agreement. The defendants argue that Paycash came into existence after the sale of the debtor's assets and has no contractual relationship with the trustee. As a result, they maintain that Paycash has no liability pursuant to any agreement between the trustee and the other defendants. Finally, the defendants argue that consistent with the covenant of good faith and fair dealing implicit in all contracts, the trustee had a duty to assist Newco "in realizing its contractual rights." They allude vaguely to "a claim for offset or equitable relief" and argue that the trustee's failure to assist Newco in its claims against DHL should excuse the defendants from compliance with the Sale Agreement.

---

[3] Neither the complaint nor the motion for summary judgment contains a request to extend the preliminary injunction to a permanent injunction. As the preliminary injunction has been issued and remains in place, there is nothing further to be done as to count IV.

[4] Answer ¶ 12.

5

**Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. 7056. A "genuine" issue is one supported by evidence that a "reasonable jury, drawing favorable inferences," could resolve in favor of the nonmoving party. *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 2002). A disputed fact must be "material," meaning that it has "the potential to change the outcome of the suit" under the governing law if the dispute is resolved in favor of the nonmovant. *McCarthy v. NW Airlines, Inc.*, 56 F.3d 313, 314-15 (1st Cir. 1995). The moving party bears the initial responsibility of informing the court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only if the record, viewed in that matter and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

**Discussion**

The defendants' answer establishes that they do not dispute that C.A. Acquisition agreed to make earn-out payments totaling $150,000 for calendar years 2009 and 2010 and agreed to provide quarterly revenue reports to the trustee for those years.[5] They acknowledge that the trustee conveyed the debtor's property to Newco. Nevertheless, they claim they should be excused from

---

[5] Answer ¶¶ 12-13.

performing under the Sale Agreement.

In support of their frustration of purpose argument, the defendants assert that the affirmative defense should apply upon the establishment of three elements: (1) that the frustrated purpose was a principal purpose of the contract, (2) that the frustration was substantial, and (3) that the non-occurrence of the frustrating event was a basic assumption upon which the contract was made. *NPS, LLC v. Ambac Assur. Corp.,* 706 F. Supp.2d 162, 176 (D. Mass. 2010) citing *Metro. Life Ins. Co. v. RJR Nabisco, Inc.,* 716 F. Supp. 1504, 1523 (S.D.N.Y. 1989).

The defendants' reliance upon *NPS, LLC v. Ambac Assur. Corp.* is misplaced. Although the case was heard in United States District Court for the District of Massachusetts, the court applied New York law to the breach of contract dispute at issue. Under Massachusetts law, applicable to the case before me by the parties' choice of law memorialized in paragraph 12.4 of the Sale Agreement, the test for frustration of purpose differs from the standard cited by the defendants in a significant respect.

The Massachusetts Supreme Judicial Court ("SJC") deemed the standard for establishing frustration of purpose to be consistent with both the definition of "commercial impracticability" outlined by the Restatement (Second) of Contracts and the SJC's past treatment of the issue. Under Massachusetts law, frustration of purpose occurs:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

*Chase Precast Corp. v. John J. Paonessa Co., Inc.*, 409 Mass. 371, 375, 566 N.E.2d 603, 606 (1991) quoting Restatement (Second) of Contracts § 265 (1981).

The standard for establishing frustration of purpose under Massachusetts law differs from the test put forth by the defendants because the Massachusetts definition includes the caveat "unless the language or circumstances indicate the contrary."

In this case, the defendants argue that acquiring the contract with DHL was their principal purpose for entering into the Sale Agreement. Neither the Sale Agreement nor any other agreement between the trustee and the defendants includes an articulation of such a purpose.

The defendants argue that their intent can be inferred because only the contract with DHL generated profits at the time of purchase. Since C.A. Acquisition purchased all the assets of the debtor, however, and failed to include language in any agreement with the trustee regarding any assets in particular, it is impossible to conclude that obtaining the DHL contract was the principal purpose for entering into the Sale Agreement. Furthermore, just because the DHL contract was the only profit-generating asset acquired by the defendants, it was not the only asset with value.

In applying the frustration of purpose test to the case before it, the SJC in *Chase Precast Corp. v. John J. Paonessa Co., Inc.* examined which party bore responsibility for the occurrence of the event which caused the alleged frustration of purpose. *Chase Precast Corp. v. John J. Paonessa Co., Inc.*, 409 Mass. at 375-76. The court concluded that the availability of the defense of frustration of purpose depended upon whether the occurrence of the event "was a risk allocated by the contracts" to the promisee. *Id.* The SJC summarized:

> [G]iven the commercial circumstances in which the parties dealt: Was the contingency which developed one which the parties could reasonably be thought to have foreseen as a real possibility which could affect performance? Was it one of that variety of risks which the parties were tacitly assigning to the promisor by their failure to provide for it explicitly? If it was, performance will be required. If it could not be so considered, performance is excused.

8

*Id.* quoting *Mishara Constr. Co. v. Transit-Mixed Concrete Corp.,* 365 Mass. 122, 129, 310 N.E.2d 363 (1974).

In this case, the risk of loss of any of the debtor's assets was more than tacitly assigned to the promisor, here the purchaser. Paragraph seven of the Sale Agreement provides: "Buyer acknowledges that the trustee shall sell the Assets 'as is', 'where is' without any representations or warranties whatsoever including, without limitation, with respect to any and all of the Debtor's intellectual property." Additionally, several weeks before the trustee and C.A. Acquisition entered into the Sale Agreement, the trustee obtained the court's permission for C.A. Acquisition to manage the debtor's business. In their management capacity, C.A. Acquisition would have had the opportunity to perform due diligence regarding the debtor's assets. If a particular asset or assets proved crucial, C.A. Acquisition could have indicated as much in the Sale Agreement.

The Bill of Sale also explicitly states (in capital letters):

TRANSFEROR EXPRESSLY DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES AS TO THE CONDITION, USE, EXISTENCE, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF, OR THE EXTENT OF THE DEBTOR'S INTEREST (IF ANY) IN THE SUBJECT ASSETS SO SOLD, AND THE TRANSFEREE, BY THE ACCEPTANCE OF THIS BILL OF SALE, ACKNOWLEDGES RECEIPT THEREOF AND AGREES THAT THE TRANSFEROR HAS MADE NO REPRESENTATIONS OR WARRANTIES AS TO (A) THE CONDITION, USE, EXISTENCE, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE THEREOF, OR (B) THE EXTENT OF THE DEBTOR'S INTEREST (IF ANY) THEREIN, AND THAT THE TRANSFEREE ACCEPTS THE SUBJECT ASSETS "AS IS," "WHERE IS," AND "WITH ALL FAULTS" AT THIS TIME OF DELIVERY. [6]

---

[6] "Under normal trade practices, these terms ('as is and where is,' and 'with all faults,' and 'fitness for a particular purpose') limit the liability of the seller for defects in the product being offered." *In re Consol. Med. Transp., Inc.*, 300 B.R. 435, 449 (Bankr. N.D. Ill. 2003).

Applying Massachusetts law to the facts here leads inescapably to the conclusion that a defense of frustration of purpose is not available to the defendants.

In addition to the frustration of purpose argument put forth by the defendants, they also advance the defense that they should be excused from performance under the Sale Agreement because the trustee failed to assist them in protecting their rights under the DHL contract. They assert that DHL wrongfully terminated the contract and that the trustee had a duty to actively assist with their efforts to compel DHL's performance. The defendants did not proffer at oral argument or in their pleadings any case law or other legal basis for their position that the trustee had a duty to assist them in any way to preserve or maintain the value of the assets purchased from him, nor do they establish any issue of material fact as to a claim for offset or equitable relief. Needless to say the agreements are entirely silent on the matter. In the absence of an express obligation of the seller to assist or indemnify a purchaser with respect to assets being purchased, I find that the seller would have no such obligation. *In re Dartmouth Audio, Inc.*, 42 B.R. 871, 874 (Bankr. D.N.H. 1984) citing 4B *Collier on Bankruptcy*, 14th Ed., § 70.98 (17), p. 1193 (1981). ("In the absence of specific warranty clauses bankruptcy sales are governed by the rule 'caveat emptor.'")

The defendants go on to argue that C.A. Acquisition should not be liable under the Sale Agreement because Newco was not a true nominee but rather the acquirer of the debtor's assets. Paragraph three of the Sale Order authorized the trustee "to consummate the Sale of the Subject Assets to Buyer or its nominee," defining "Buyer" by reference to the Sale Agreement attached to the order as C.A. Acquisition. By the terms of the Bill of Sale, C.A. Acquisition designated Newco as its nominee "to acquire and accept, all of the Debtor's right, title, and interest" in the assets provided for in the Sale Order. The Bill of Sale does not contain any provision releasing C.A.

10

Acquisition, as the initial purchaser, from the terms of the agreement with the trustee. Nothing in the Sale Order suggests that C.A. Acquisition would be excused from performance if the debtor's assets were transferred to a nominee.[7] Accordingly, the trustee's transfer of title to the assets directly to Newco did not relieve C.A. Acquisition from its obligations under the Sale Agreement or Sale Order.

Although the trustee argues that Paycash should also be considered a nominee of C.A. Acquisition, the record at this stage contains no evidence of transfer or assignment of any rights of the debtor from C.A. Acquisition or Newco to Paycash. There simply is no basis on a motion for summary judgment for me to grant the trustee any relief as to Paycash.

I find that granting summary judgment against both C.A. Acquisition and Newco on count I is appropriate at this stage because the defendants have failed to establish any issue of material fact as to the trustee's assertion that the 2009 minimum earn-out payment of $25,000 is owed but remains unpaid. Count III, anticipatory breach of the 2010 earn-out provision of the Sale Agreement requiring a minimum payment of $125,000, is effectively subsumed by count I. By the time the trustee filed his motion for summary judgment, the 2010 payment was past due. The defendants have failed to establish any issue of material fact as to the trustee's assertion that the 2010 minimum earn-out payment of $125,000 is owed but remains unpaid. Furthermore, since the

---

[7] The defendants do not specifically raise the issue, but their argument that Newco was not a nominee but rather the acquirer of the assets of the debtor is evocative of an argument based on novation theories. Under Massachusetts law, novation is an affirmative defense and may be inferred from the conduct of the parties. *Clark v. Gen. Cleaning Co.*, 345 Mass. 62, 64, 185 N.E.2d 749, 750 (1962). It requires "the agreement of the parties to an extinguishment of the prior contract and to a substitution of the new contract." *Pagounis v. Pendleton*, 52 Mass. App. Ct. 270, 273, 753 N.E.2d 808, 811 (2001). Even if the defendants had successfully articulated an argument based on novation, they would be unsuccessful because they have failed to demonstrate that the parties agreed to extinguish the Sale Agreement in favor of the Bill of Sale.

11

defendants affirmative defense of frustration of purpose is unavailable to them, the trustee is entitled to judgment as a matter of law on the issue of the failure of C.A. Acquisition and Newco to make both the 2009 and 2010 earn-out payments totaling $150,000.[8] Together C.A. Acquisition and Newco are jointly and severally liable for the amounts owed. The record at this stage being inadequate to make a determination regarding the role of Paycash, summary judgment is denied as to Paycash on both count I and count III.

In count II of the complaint, the trustee argues that the defendants should be held in contempt for failure to comply with the terms of both the Sale Agreement and the court's Order dated May 18, 2009. To be held in contempt, a party "must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991). *See also In re Fatsis*, 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009) ("A party alleging civil contempt must establish by clear and convincing evidence that a contemnor violated a court order. The underlying order must be clear and unambiguous in its terms.") (Internal citations omitted).

The trustee states that on June 10, 2009, C.A. Acquisition submitted one quarterly revenue report for the first quarter of 2009, and in 2010 submitted bank statements in lieu of reports. The defendants argue that they provided bank statements, invoices, and other records that reflected the revenues of the defendants. The trustee's concession that the defendants provided a report for the first quarter of 2009 and bank statements covering the period following the September 29, 2008 sale leads me to conclude that the defendants' conduct did not exhibit clear and convincing evidence of a violation of the court's Order. As a result, the trustee's motion for summary

---

[8] In footnote one of the trustee's memorandum in support of his motion for summary judgment, he states that the full amount of the earn-out totals $150,000.

judgment on count II of the complaint is denied as to all three defendants.

An order consistent with this memorandum shall enter.

Dated: July 25, 2013                                                                            By the Court,

                                                                                Melvin S. Hoffman
                                                                                U.S. Bankruptcy Judge

Counsel appearing

Joseph H. Baldiga, Esq
Robert B. Gibbons, Esq.
Matthew R. Fisher, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
Worcester, MA
For the plaintiff, Joseph H. Baldiga,
Chapter 7 trustee

Harishanker Nesathurai, Esq.
Toronto, ON
For the defendants